Estado Libre Asociado de Puerto Rico, etc., peticionario, *v.* Tribunal Superior, Sala de Expropiaciones, Hon. Adaljisa Díaz de Collazo, Juez, demandado, Aguirre Corp. of Puerto Rico, interventora.

*Número:* O-74-132    *Resuelto:* 29 de mayo de 1975

*Myriam Naveira de Rodón, Procuradora General, Peter Ortiz, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados del peticionario; *Saldaña, López Baralt & Rey* y *Clemente Pérez Martínez,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Hemos de resolver un incidente interlocutorio en el procedimiento de expropiación seguido por el Gobierno contra la Central Aguirre.

Es necesario fijar la justeza de la compensación y a tales fines el Gobierno ofreció como venta similar la efectuada por la Central Guánica a favor de la Administración de Terrenos en mayo de 1970, precedente que rechazó Aguirre bajo la premisa de haber sido una venta involuntaria u obligada. Así lo entendió la Sala de Expropiaciones que excluyó la prueba y expedimos *certiorari.*

Un examen de la transcripción de evidencia nos ha convencido de que la sala de instancia, cautivada por detalles secundarios de la prueba, perdió la correcta perspectiva que conduce a la realidad de que la referida transacción de compraventa no sólo fue voluntaria, sino que representó el más ventajoso negocio que podía realizar la Central Guánica en las duras realidades del mercado azucarero de los años 1969–70. El precio cercano a los $4,000,000 pagado por la Administración de Terrenos refleja con fidelidad el valor comercial del molino, el batey y terrenos involucrados. Así se deduce de las sombrías alternativas para una central que había resuelto cerrar a fines de 1969: desmantelar el ingenio y venderlo

fuera de Puerto Rico por unos $2,000,000 y emprender la aventura de crear una zona de atracción turística; y quedar trabada en gravosos contratos de arrendamiento y molienda, bonificación y servicios a colonos que el Gobierno finalmente asumió. El valor comercial de la Central Guánica lo determinaron la decadencia de la industria azucarera sobrevenida como consecuencia de baja en el precio mundial del azúcar, reducida productividad de la caña en el país y mutaciones económicas radicales inherentes a un desarrollo que había desplazado la agricultura.

La ilustrada representación de Aguirre admite que no hubo coacción o presión oficial abierta para obligar a vender, que la compulsión era más bien un estado de ánimo o clima que sólo podía captar el juzgador de los hechos. Su argumento no está sostenido por la prueba. El Ingeniero Rodríguez Chacón, Director del Programa de Rehabilitación de la Industria Azucarera, declaró sin ser refutado, que el valor en el mercado de la Central Guánica, desprovista de cañas propias, podía fijarse en cero; un grupo de colonos sólo llegó a una oferta de $1,500,000 antes de que la Administración de Terrenos entrara en las negociaciones, el Gobierno no se inclinaba a la imposición socializadora y tan lejos se hallaba de recurrir a su poder de expropiación que aprobó una cláusula en un convenio colateral sobre la finca Belvedere exigida por la Central y diseñada precisamente para impedir que el precio de un remanente pudiera usarse por el Estado como venta comparable para reducir la compensación por una porción anteriormente adquirida. La intervención del Gobernador de Puerto Rico y altos funcionarios de su administración, si bien demostró una legítima preocupación por el problema de desempleo que produciría el cierre de Guánica, fue mesurada, sin amenazas de expropiación.

■ La regla general excluyente de ventas al Estado como precedentes similares y limitaciones de su valor probatorio si fueren admitidas, tiene su excepción cuando los hechos del

caso demuestran que el poder de expropiación no hizo sentir su peso en el acuerdo final. La entrada del Gobierno a la operación de salvamento o compra del molino de Guánica se produjo a solicitud del Administrador de la central en carta angustiosa al cabo de la modesta oferta de compra del grupo de colonos.

■ El simple hecho de que una de las partes en la compraventa tenga poder de expropiación de por sí no hace la venta compulsiva, al menos cuando ningún paso para ejercer ese poder se hubiera tomado antes de negociar la venta.

■ Para apreciar el valor probatorio de la venta ha de preguntarse si las circunstancias irrelevantes que influyeron en las partes fueron de las que podrían afectar el precio pagado y en consecuencia anular su utilidad como medida de valor. Nichols, *On Eminent Domain,* Tomo 5, Sec. 21.33, pág. 21-105 y ss., Ed. 1969.

■ La prueba acusa un caso típico de negociación libre por ambas partes y la aceptación por la Central Guánica del mejor precio obtenible en el decadente y arruinado mercado de azúcar.

El hecho de que parte del precio acordado y pagado consistiera en la asunción por el Gobierno de los contratos de arrendamiento y servicios con los colonos, no introduce falta de certeza en el precio. Se trata de obligaciones claras para cuyo cumplimiento se comprometieron fondos públicos por lo que deben estar disponibles para la Sala de instancia los informes y estados de cuenta que indiquen el importe total de ese elemento integrante de precio.

Por estimar voluntaria la venta mediante la cual el Gobierno adquirió el molino y dependencias de la Central Guánica, *se anula la resolución recurrida y se remite el expediente al tribunal de instancia para continuación de procedimientos consistentes con lo ahora resuelto.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Negrón García se inhibieron.